UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

       -against-                                   23-cv-5326 (LAK)

LEGEND VENTURE PARTNERS LLC,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-11-2023

**MEMORANDUM REGARDING
APPOINTMENT OF RECEIVER**

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff, the Securities and Exchange Commission ("SEC"), brought this action against Legend Venture Partners LLC ("Legend") for alleged violations of various provisions of the federal securities statutes, the Investment Advisers Act of 1940, and the rules promulgated thereunder. This action is related to the SEC's lawsuit against StraightPath Venture Partners LLC ("StraightPath") and its founders and former manager for substantially the same alleged violations.[1]

        On June 22, 2023, the SEC filed an emergency application for an order to show cause, temporary restraining order, and preliminary injunction to, *inter alia*, restrain Legend from violating

---

[1] *SEC v. StraightPath Venture Partners, LLC, et al.*, 22-cv-3897 (LAK) (S.D.N.Y.).

The SEC alleges that "Legend was an outgrowth of . . . StraightPath." Dkt 1 (Compl.) at 2 ¶ 3. According to the SEC, "[p]rior to February 2022, Legend principals and many of its sales agents served as sales agents for StraightPath, and almost 60 percent of Legend's investors, accounting for almost 70 percent of the total funds Legend raised from investors, had previously invested in StraightPath pre-IPO funds. . . . Legend's principals ultimately raised more money for StraightPath and earned more in commissions (nearly $35 million) than any other group of StraightPath sales agents." *Id.* at 2 ¶ 3, 6 ¶ 17.

2

the securities laws, direct Legend to provide a verified accounting of its assets, and appoint a receiver over Legend and its associated investment funds to marshal and preserve their assets. Following briefing and oral argument, the Court granted the SEC's application for a preliminary injunction in all respects except for the appointment of a receiver. On that issue only, the Court invited Legend to make any proposal regarding an alternative to a receivership directly to the SEC, and instructed the parties to submit briefing as to why the Court should accept their respective plans with respect to a receivership if they were unable to reach a resolution. Having been unable to resolve the issue, Legend filed a letter urging the Court to accept its alternative to the appointment of a receiver and the SEC filed its letter in favor of appointment of a receiver. The Court subsequently appointed Judge Melanie Cyganowski (former), who was appointed also as the receiver in the StraightPath action, as the receiver here (Dkt 33). This memorandum sets forth the Court's reasons for doing so.

Legend's proposed alternative to a receiver involves the assistance of an investment management company, Midway Venture Partners LLC ("Midway"), and its affiliated broker-dealer, World Equity Group, Inc. ("World Equity Group"), "to create a process by which Midway ensures that each Legend investor's pro rata share of each pre-IPO investment is promptly distributed to that investor according to the terms of the subscription documents with Legend."[2] Specifically, "[u]nder Legend's proposal, Midway shall cause brokerage accounts to be opened at World Equity Group for each Legend investor who invested in any of the seven pre-IPO companies in which Legend

---

[2] Dkt 28 (Def. Letter) at 1.

"Midway is the counterparty on Legend's purchase agreements for interests in four of the companies Legend invested in[.] . . . World Equity Group also acted as broker on forward agreements between Legend and individual owners of pre-IPO shares of Plaid, Inc. pursuant to which the individuals were obligated to deliver the agreed-upon number of shares following an initial public offering." *Id.* at 2.

purchased interests. . . . Once any of the seven pre-IPO companies in which Legend purchased interests go public (or experience another liquidity event), and as permitted by the Court, Midway shall distribute stock or cash proceeds to the brokerage accounts of Legend's investors immediately upon receipt in accordance with each investor's subscription to a Legend Fund. . . . Should a Legend investor decline to open a brokerage account with Midway, Midway, for such investors, shall distribute IPO shares or cash directly to investors in accordance with such investors' instructions."[3]

The crux of Legend's proposed alternative to a receiver is that it will "maximize returns to investors at the lowest cost."[4] Specifically, it argues that:

(1) its proposal "is the fastest way to ensure that a process is set up to protect Legend's investors",

(2) "investors will not be burdened by having to pay a portion of the returns that rightfully belong to them to a receiver" because "Midway and World Equity Group will not charge fees for the services that they provide pursuant to this proposal"[5],

(3) "Midway and World Equity Group are experienced and trustworthy fiduciaries who already have extensive knowledge of the pre-IPO investment market and will not need time to get up to speed on Legend's investments," and

(4) "a sampling of Legend's investors have indicated to Legend's counsel that

---

[3]     *Id.* at 2.

[4]     *Id.* at 3 (letters de-capitalized).

[5]     Legend also "has agreed to waive any incentive fees that might be due at the time of an IPO or other liquidity event." *Id.* at 2.

a lower-cost alternative to a receiver that distributes investors' returns in accordance with their respective subscriptions to the Legend Funds at the time the company they invested in goes public would be preferable to an expensive receiver tasked with locating assets that have already been located and using a portion of investors' returns to compensate itself."[6]

It contends also that "[t]o the extent that the SEC wishes to outsource claims against third parties to a receiver . . . it is not clear that a receiver would have standing to do that."[7]

The principal flaw in Legend's proposal is that it fails to account for Legend's, its principals', and Midway's conflicts of interest. As noted by the SEC, although Legend "asserts that Midway 'would be ordered by the Court . . . to distribute promptly to investors the proceeds of an IPO' . . . Legend proposes no structure pursuant to which Midway—which is not a party to this proceeding and which would presumably operate at Legend's direction—would obtain court approval to make these distributions."[8]  Indeed, Legend's proposal "does nothing to safeguard potential Legend or [its funds] assets possessed by third parties, *including Legend's principals and sales agents*, or to accomplish the other important tasks of a receiver such as to formulate a claims process, to recommend and implement a distribution plan, and to keep investors and the Court fully and accurately informed."[9]  Notably, Legend's proposal makes no mention of any mechanism,

---

[6] *Id.* at 3-4.

[7] *Id.* at 6.

[8] Dkt 30 (Pl. Letter) at 4 (quoting Dkt 29, Ex. A to Decl. of Selbie Jackson).

[9] *Id.* at 2 (emphasis added).

whether through an escrow or by other means, of preserving for potential distribution the allegedly more than $12.8 million that Legend's principals allegedly "took . . . to pay themselves and their sales agents."[10] Moreover, Midway itself "is hopelessly conflicted by virtue of its pre-existing relationships with both Legend and StraightPath," as it acted as a counterparty to Legend "in transactions that are relevant to the fraud claims in this case" and it and one of its principals acted also "as counterparties to StraightPath in transactions that are relevant to the [SEC's] fraud claims in the StraightPath Action."[11] In these circumstances, and given Legend's principals' former relationships with StraightPath, the Court has no reason to trust Legend and its principals to act in the best interests of all of Legend's investors.[12]

Accordingly, for the reasons discussed above and substantially for the reasons cited by the SEC, the Court is persuaded that a court-appointed receiver will best serve the interests of all investors of Legend and its funds.

SO ORDERED.

Dated: July 11, 2023

/s/ Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge

---

[10] *Id.* at 5.

[11] *Id.* at 2 & n.2, 4. *See also id.* at 4 ("Indeed, during the period of Legend's fraudulent conduct, one of Legend's principals appeared to collaborate with Mr. Power [(Midway's principal)] to prevent information regarding the actual prices that Legend paid to acquire Pre-IPO Shares from reaching others.").

[12] With respect to Legend's argument that a receiver might lack standing to file claims against third parties on behalf of the SEC, the SEC argues that "[a] receiver could marshal additional estate assets not as part of the [SEC's] 'regulatory function,' but, if deemed appropriate, through potential clawback or avoidance actions to recover fraudulently transferred receivership property." *Id.* at 2 (quoting Dkt 28 (Def. Letter) at 6) (citing *Cobalt Multifamily Inv'rs I, LLC v. Arden*, 46 F. Supp. 3d 357, 363 (S.D.N.Y. 2014)). Given that there currently is no such claim against a third party brought by the receiver, the Court does not now address this issue.