**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :

                              Plaintiff,      :

                                         :

     -v-                          :      No. 1:23-cv-05326-LAK

                                         :

LEGEND VENTURE PARTNERS LLC,      :

                                       :

                     Defendant.     :
------------------------------------------------------------------X

### FIRST JOINT INTERIM APPLICATION OF THE RECEIVER AND OTTERBOURG P.C. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD <u>JULY 7, 2023 THROUGH AND INCLUDING SEPTEMBER 30, 2023</u>

Melanie L. Cyganowski, the receiver (the "*Receiver*") for Legend Venture Partners LLC

("*LVP*"), Legend Ventures Fund 1 LLC, Legend Ventures Fund 2 LLC, Legend Ventures Fund 3

LLC, Legend Ventures Fund 4 LLC, Legend Ventures Fund 5 LLC (collectively, the "*LV Funds*",

and together with LVP, the "*Receivership Entities*" or "*Legend*"), and Otterbourg P.C., as counsel

to the Receiver ("*Otterbourg*" and, together with the Receiver, "*Applicants*") hereby submit this

First Joint Interim Application (the "*First Interim Application*" or "*Application*") for Allowance

of Compensation and Reimbursement of Expenses Incurred During the Period from July 7, 2023

Through and Including September 30, 2023 (the "*Application Period*").

There are two components to this Application: (i) the Receiver's services and (ii) the

services of her counsel (Otterbourg).  The Receiver requests interim approval of fees in the amount

of $5,589.00 for the Application Period.  Otterbourg requests interim approval of fees in the

amount of $65,463.20 and reimbursement of expenses in the amount of $1,036.29 for the

Application Period, for a combined total of fees for the Applicants in the amount of $71,052.20[1] and expenses in the amount of $1,036.29 for the Application Period.  These amounts reflect the significant discounts that the Receiver and Otterbourg have applied to the time charges accrued during the Application Period.

The First Interim Application contains the following sections:

**Section I** provides a preliminary statement of Applicants' activities during the Application Period.

**Section II** summarizes the background of the receivership and also contains case status information required by Section D.2 of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "***Billing Guidelines***").  Section II also describes the procedures used by Otterbourg in compiling its billing records and provides other information as requested by the Billing Guidelines, including a description of each exhibit to this First Interim Application and the reduction in fees agreed to in connection with the appointment of the Receiver.

**Section III** contains a summary of the fees and expenses requested and identifies the specific Otterbourg professionals who billed time during the Application Period and their specific roles.

---

[1] This total amount reflects several discounts voluntarily made by Applicants: (1) a public service accommodation of a twenty-five percent (25%) reduction in the Receiver's recorded time charges; and (2) a public service accommodation of a twenty percent (20%) reduction in Otterbourg's recorded time charges.  Therefore, before application of these accommodations, the Receiver's recorded time charges during the Application Period were $7,452.00 and Otterbourg's recorded time charges were $81,829.00, for a combined gross legal fees total of $89,281.  Additionally, the public service accommodations do not include other voluntary reductions by Otterbourg with respect to certain matters, which are taken in connection with its customary review of its recorded time detail.  The Receiver has agreed to reduce her aggregate fees (prior to application of the public service reduction) to discount for the increase in her standard billable rate since her appointment. In accordance with Otterbourg's regular practice, its hourly rates are reviewed and potentially increased on October 1st of each year.

**Section IV** contains narrative description of the work Applicants performed on behalf of the Receivership Estate (as defined below) during the Application Period, under each project category, in accordance with Section D of the Billing Guidelines. All such categories correspond with the SEC's Billing Guidelines.

**Section V** contains a summary of all expenses for which Applicants seek reimbursement and the procedures and policies adopted by Applicants to ensure compliance with Section E of the Billing Guidelines.

**Section VI** briefly summarizes the standards to be applied by the Court in determining fee awards in SEC receivership cases.

**Section VII** provides a description of the allowed fees that the Receiver and Otterbourg have agreed to holdback with respect to the First Interim Application.

## I. PRELIMINARY STATEMENT

During the Application Period, Applicants :

(i)     To assist the Receiver with her duties, prepared and filed the applications to retain Otterbourg as her legal counsel [Dkt. No. 44], Stout Risius Ross, LLC ("*Stout*") as her financial advisor [Dkt. No. 45], and BRG as her tax advisor [Dkt. No. 51] ("*BRG*", and along with Otterbourg and Stout, the "*Receivership Team*");

(ii)    undertook steps to take control of the Receivership Entities' pre-existing bank and financial accounts;

(iii)   took steps to identify and take control of the Receivership Entities' books and records and ascertained information about the Receivership Entities;

(iv)    travelled to the office space that was maintained by the Receivership Entities, located at 90 Broad Street New York, New York (the "*New York Office*"), to inspect the space, and take control of hard copy documents and electronic devices;

(v)    reviewed information and documents with respect to the Receivership Entities' historical financial affairs and interactions with investors and creditors;

(vi)    filed the Receivership Order in accordance with 28 U.S.C. § 754 in certain United States District Courts in the United States;

(vii)    took steps to take inventory and control of the Receivership Entities' Shares[2] in specific private companies (each a "*Pre-IPO Company*");

(viii)    analyzed tax issues related to the Receivership;

(ix)    communicated with the Receivership Entities' legacy attorneys and tax accountant;

(x)    assisted BRG with preparation and filing of 2022 tax returns and issuing 2022 Schedule K-1s, which were not filed as of the time of the Receiver's appointment;

(xi)    reviewed pending litigation against the Receivership Entities; and

(xii)    communicated with investors and purported creditors of the Receivership Entities.

## II.    CASE BACKGROUND AND STATUS

### A.  Case Background

*SEC Complaint*

On June 22, 2023, the Securities and Exchange Commission (the "*SEC*") filed a complaint (the "*Complaint*" or "*Compl.*") commencing this action against LVP, alleging, among other

---

[2] Although this Application generally refers to "Shares" in Pre-IPO Companies, the Receivership Entities' interests in Pre-IPO Companies are not necessarily actual shares of stock in Pre-IPO Companies. LVP purchased Pre-IPO interests primarily through (i) interests in special purpose vehicles ("*SPVs*"), which are non-Legend entities controlled by third-parties that invested in Pre-IPO Companies; and (ii) forward contracts. Solely for convenience, this Application refers to "Shares" to include all such interests acquired by the Receivership Entities.

things, violations of various sections of the Securities Act, the Exchange Act, and the Advisers Act, and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of alleged ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Dkt. No. 1].

In the Complaint the SEC alleges that from February through October 2022, LVP raised more than $35 million from more than 300 investors located across the country (Compl. ¶2).  The SEC alleges that LVP, along with a network of unregistered sales agents, engaged in illegal, unregistered offerings of securities in investment vehicles that purportedly provided access to Pre-IPO Shares of private companies that LVP told investors were likely to undertake a public offering in the near future ("**Pre-IPO Companies**").

The SEC alleges that although LVP told investors that LVP would only receive compensation after the Pre-IPO Companies went public, and that it was not charging upfront fees or commissions, LVP charged investors upfront markups on all investments, averaging between 46% and 105% above the prices LVP paid for the Pre-IPO Shares, and that LVP's principals paid themselves more than $9 million and their sales agents more than $3.25 million. (Compl. ¶4).

*Appointment of Receiver and Receivership Order*

Simultaneous with the filing of the Complaint, the SEC sought and obtained emergency relief, including a temporary restraining order and an order freezing the assets of the Receivership Entities [Dkt. No. 6].  On July 7, 2023, the Court entered the Order Appointing Receiver [Dkt. No. 33] (the "**Receivership Order**"), in which the Court appointed the Receiver for the estate of the Receivership Entities (the "**Receivership Estate**" or "**Receivership**").

*Retention of Otterbourg*

The Receivership Order authorizes the Receiver to engage professionals to assist her in fulfilling her duties. On July 31, 2023, the Court granted the Receiver's application to retain Otterbourg as her counsel effective as of July 7, 2023. [Dkt. No. 44].

## B. Case Status

In accordance with Section D.2 of the Billing Guidelines, Applicants state as follows:

(a) As of September 30, 2023, the Receivership Entities had $0 in cash, although they did maintain bank accounts at Flagstar Bank N.A. f/k/a Signature Bank ("*Flagstar*").

(b) The fees and expenses for the Receiver, Otterbourg, Stout and BRG that have been incurred during the Application Period total in the amount of $199,038.46.

(c) Cash disbursements and receipts:

   i.   Cash disbursements during the Application Period totaled $0.

   ii.  Cash receipts during the Application Period totaled $0.

(d) As of September 30, 2023, the primary assets of the Receivership Estate consisted of Pre-IPO Shares, including holdings in SPVs and forward contracts.

At the time of this First Interim Application, the Receiver continues to collect and review financial information with respect to the Receivership Entities, including the ownership of the Pre-IPO Shares. As alleged in the Complaint, LVP purchased the Pre-IPO Shares for $22 million. The current value of the Receivership Entities' investment portfolio has not been determined and is subject to change based on the market for Pre-IPO Shares.

(e) As to liquidated claims or unliquidated claims, the Receiver is continuing to investigate potential claims. The Receivership Entities may have causes of action against a number of parties and the Receiver will be considering associated claims. Applicants cannot at this time

state whether any actions will be commenced and, if commenced, the value of any claims and the likelihood of collecting on any judgment that may ultimately be obtained.

(f) The Receiver has not yet initiated a formal claims process. Thus, no claims proceedings have yet been commenced.

(g) Applicants cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

### III.    FEES AND EXPENSES REQUESTED

As noted, for the Application Period, the Receiver requests approval of interim compensation in the amount of $5,589.00.  Otterbourg requests approval of interim compensation in the amount of $65,463.20 and reimbursement of expenses in the amount $1,036.29.  Thus, on a combined basis, the Applicants seek approval of fees of $71,052.20 and expenses of $1,036.29, for a total request of $72,088.49.

There was a great amount of work performed by the Applicants during the Application Period with respect to the operations and financial affairs of the Receivership Entities.  This required the Receiver to assemble a team of Otterbourg professionals to address different items. The Otterbourg professionals communicate with each other and the other retained professionals regularly to keep others informed of their activities and avoid duplication of effort.

The fees requested are determined on the basis of the hours worked by Otterbourg attorneys and paraprofessionals, as well as the Receiver, and the hourly rates in effect at the time the services were rendered, as modified by a public service accommodation and other reductions provided by the Applicants.  The fees requested also take into account all relevant circumstances and factors as set forth in the New York Lawyer's Rules of Professional Responsibility, as applied to Otterbourg as attorneys, including the nature of the services performed, the amount of time spent, the

experience and ability of the lawyers and legal assistants working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by Applicants.

Pursuant to the public service accommodation applicable to this matter, a twenty-five percent (25%) reduction has been applied to the Receiver's recorded time. Furthermore, fees for legal services performed by Otterbourg professionals have been reduced by twenty percent (20%) from the aggregate recorded time charges.

Pursuant to the public service accommodations described above, the recorded time charges for the Receiver have been reduced from $7,452.00 to $5,589.00, a reduction in the amount of $1,863.00. Moreover, the recorded time charges for the Otterbourg professionals have been reduced from $81,829.00 to $65,463.20, a reduction in the amount of $16,365.80. Therefore, the total reduction for fees incurred during the Application Period by the Receiver and Otterbourg professionals is $18,228.80. This does not include other voluntary reductions in the work recorded with respect to certain matters, which are taken in connection with Applicants' customary review of their recorded time detail and the Receiver's agreement not to bill for Otterbourg professionals billing less than fifteen (15) hours for the Application Period.

In accordance with Section F.3.j. of the Billing Guidelines, long distance travel time is not reimbursable unless the applicant is performing work properly billed as fees. During the Application Period, Applicants did not travel long distance in connection with the Receivership.

In addition, as required by the Billing Guidelines, prior to the filing of this Application the Receiver and Otterbourg submitted Applicants' time detail to the SEC for its review.

This First Interim Application includes certain exhibits:

(a)     The SFAR for the period of July 7, 2023 through September 30, 2023 is attached as **Exhibit A** hereto.

(b)     A Fee Schedule showing the total fees billed and hours worked during the Application Period by the Receiver and each Otterbourg professional, along with the adjusted billing rates of each such professional, is attached as **Exhibit B** hereto.

(a)     In accordance with Section D.3.c. of the Billing Guidelines, a summary reflecting the total fees billed and the hours worked by the Receiver and each professional organized by project category, including a chart showing the amounts being requested after application of the accommodations discussed above, is attached as **Exhibit C** hereto.

(c)     In accordance with Section D.6 of the Billing Guidelines, the time records of the Receiver and the Otterbourg professionals for the Application Period, arranged in chronological order within each activity category, are attached as **Exhibits D** and **E**, respectively, hereto.

(d)     In accordance with Section F.1.a. of the Billing Guidelines, a summary of all expenses for which Applicants seek reimbursement organized by expense category is attached as **Exhibit F** hereto.

(e)     In accordance with Section F.1.a. of the Billing Guidelines, the expense record of Otterbourg for the Application Period is attached as **Exhibits G** hereto.

(f)     Also submitted herewith as **Exhibit H** is the certification required by Section A.1 of the Billing Guidelines.

This is the Receiver and Otterbourg's first request for fees and expenses in this case. Otterbourg received no retainer in this case.

The Receivership Order permits the Receiver and her advisors to apply to the Court for compensation and expense reimbursement on a quarterly basis. In accordance with the Billing

9

Guidelines, and as noted above, the Receiver and Otterbourg submitted the First Interim Application to SEC counsel prior to filing the Application with the Court, and SEC counsel has reviewed such time records and fees and expenses being requested pursuant to this Application.

At Otterbourg, two (2) attorneys and one (1) paralegal billed time during the Application Period (exclusive of the Receiver).[3] Because of the diversity of issues confronting the Receiver, this case necessitated the involvement of attorneys with background and experience in the multitude of disciplines relevant to this Receivership.

The particular Otterbourg professionals who billed time during the Application Period and their specific roles were as follows:

(a)    Erik B. Weinick (Member) (1.4 Hours to P01; 46.3 Hours to P04; .5 Hours to P10; 1.0 Hours to P11) – Mr. Weinick is a senior litigator and member of Otterbourg's bankruptcy department, and has extensive experience with receiverships. In addition to coordinating the work of the Receiver's professionals, during the Application Period, Mr. Weinick dedicated time to taking control of the Receivership Entities' books and records, electronic systems, legacy bank accounts, and Pre-IPO Shares. Additionally, Mr. Weinick traveled to the New York Office, communicated with Legend's legacy counsel and accountant, and prepared applications to employ the Receiver's professionals.

(b)    Michael A. Pantzer (Associate) (11.3 Hours to P01; 29.3 Hours to P04; 2.4 Hours to P10) – Mr. Pantzer is an associate in Otterbourg's bankruptcy department. During the Application Period, Mr. Pantzer assisted the Receiver with preparing and reviewing documents filed in the Receivership, taking control of the Receivership Entities' books and records, the review

---

[3] The Receiver has instructed Otterbourg to voluntarily write-off the time of any professional who billed less than fifteen (15) hours to the case during the Application Period. Accordingly, other attorneys and paraprofessionals may have worked on the matter, but payment for their time is not being requested and is not reflected in the time detail.

of the Receivership Entities' pre-receivership financial affairs, analyzing tax issues, communicating with parties concerning the Receivership Entities' ownership of Pre-IPO Shares, and communicating with parties-in-interest regarding the Receivership.

(c)    Jessica Hildebrandt (Paralegal) (1.4 Hours to P01; 22.4 Hours to P04; 6.0 Hours to P10) – Ms. Hildebrandt is a paralegal. During the Application Period, Ms. Hildebrandt assisted the Receiver with filing the Receivership Order in certain United States District Courts, taking control of Receivership Property (as defined in the Receivership Order), and other administrative matters of the Receivership.

## IV.    SERVICES RENDERED BY RECEIVER AND OTTERBOURG DURING APPLICATION PERIOD

### A. Asset Analysis and Recovery – Total Fees: $7,311.50

#### 1.    Control of Receivership Entities' Bank Accounts

With the assistance of her professionals, during the Application Period, the Receiver took control of the Receivership Entities' bank accounts that existed as of her appointment (the "***Legacy Accounts***"). The Receivership Order at Exhibit A identifies six Legacy Accounts that are listed as being maintained at Flagstar. Immediately upon the Receiver's appointment, the Receiver and her professionals took steps to contact Flagstar, provided it with written notice of the Receivership Order, and obtained online access to the Legacy Accounts. At the time that the Receiver was appointed, the Legacy Accounts had (and continue to have) a zero balance.

#### 2.    Ownership of Pre-IPO Shares

During the Application Period, Applicants took steps to identify the Pre-IPO Shares held by the LV Funds, how the Pre-IPO Shares were acquired, and how the Pre-IPO Shares are held. Additionally, the Receiver, with the assistance of her professionals, contacted certain counter-

11

parties concerning the Receivership Entities' purchase of Pre-IPO Shares prior to the Receiver's appointment.

### B. Case Administration – Total Fees: $76,952.00

This category includes tasks that may not be directly related to a specific investment or transaction, but impact the overall administration of the Receivership Estate.

### 1. The Receivership Entities' Financial and Operational Information

At the Receiver's direction immediately after her appointment, the Receivership Team took steps to gather information pertinent to administration of the estate. On July 8, 2023, the Receivership Team sent Legend's legacy counsel an initial written request for information (the "*Initial Request*"), including information with respect to the investors in the LV Funds and the Pre-IPO Share holdings of each LV Fund. The Receivership Team has received certain financial information from Legend's legacy counsel.

Additionally, during the Application Period, the Receivership Team has communicated with Legend's legacy accountant. The legacy accountant has provided the Receiver with certain documents and information regarding Legend's books and records, including among other things backup copies of Legend's QuickBooks records and copies of Legend's bank statements.

Applicants changed the Receivership Entities' mailing address on file with the United States Postal Service, to facilitate forwarding of the Receivership Entities' mail to the Receiver.

### 2. Books and Records and Control of Data Systems

During the Application Period, the Receiver took steps to take control of the Receivership Entities' Books and Records. The Receiver has been provided credentials for the Receivership Entities' pre-Receivership public-facing website (which is now inactive), Google Drive, and Microsoft 365. Further, and as discussed below, the Receiver has retrieved hard copy documents

located at the Receivership Entities' office in New York, New York as well as three laptop computers.

### 3. The New York Office Space

Prior to the appointment of the Receiver, on February 9, 2023, LVP leased the New York Office, at a monthly cost of $1,200.00.   During the Application Period, members of the Receivership Team inspected the space and took control of hard copy documents and electronic devices (including two computers) located there.  The leasing agent has advised the Receivership Team that prior to the Receiver's appointment, LVP terminated the lease effective as of July 31, 2023.  During the Application Period, Applicants vacated the New York Office and returned keys and building access cards to the leasing agent. The leasing agent has further advised the Receivership Team that there is $1,200 owed for past rent, and that the leasing agent is holding a $1,200 security deposit.

### 4. Purported Obligations of the Receivership Entities

During the Application Period, the Receiver and her team worked to identify ongoing purported obligations of the Receivership Entities for the purpose of minimizing or eliminating them, including, for example, credit cards. The Receiver confirmed that the credit card account has no outstanding balance and is closed.  The Receiver reserves her right to dispute any of the purported obligations of the Receivership Entities.

### 5. Communications with Investors and Parties-In-Interest

During the Application Period, the Receivership Team worked to identify names and contact information for 308 investors in the LV Funds.  On August 1, 2023, the Receiver sent these

investors introductory correspondence (either by email or USPS) together with notice of the Receivership Order.[4]

The Receiver created a dedicated email address for inquiries (legendreceivership@stout.com). During the Application Period, the Receivership Team responded to phone calls and correspondence from investors and purported creditors and communicated with those parties. As of mid-October 2023, the Receivership Team has received or made over 100 individual communications by phone and email with parties-in-interest, including receiving inquiries from over 88 investors and other parties-in-interest.

### 6. Retention of Professionals

After the Court entered the Receivership Order, the Receiver filed an application to retain Otterbourg as her counsel [Dkt. No. 41], an application to retain Stout as her financial advisor [Dkt. No. 43] and an application to employ BRG as her tax advisor [Dkt. No. 49]. The Court approved the retentions by Orders dated on July 31, 2023 [Dkt. Nos. 44 and 45] and September 11, 2023 [Dkt. No. 51].

### 7. Filing of Receivership Order in the United States District Courts and Notice to the IRS of the Receiver's Appointment

During the Application Period, in accordance with 28 U.S.C. § 754, the Receiver filed copies of the Complaint and the Receivership Order in United States District Courts in districts where the Receiver believes Receivership Property (as defined in the Receivership Order) is most likely to be located.

The Receivership Team prepared the necessary forms to be sent to the IRS with written notice of the Receiver's fiduciary appointment over each of the Receivership Entities.

---

[4] After contacting the 308 investors, the Receiver identified approximately 12 additional investors and has communicated with those investors.

### 8. Pending Litigation Against the Receivership Entities

The Receivership Order provides for a stay, with certain exceptions, of civil legal proceedings against the Receivership Entities, including explicitly staying the action styled *Meyer, et al., v. Legend Venture Partners LLC, et al.* 23 Civ. 960-JPO (S.D.N.Y.) (the "*Meyer Action*"). (Receivership Order, Sec. IX).

In the Meyer Action, nine (9) plaintiffs (the "*Meyer Plaintiffs*") commenced an action in the United States District Court for the Southern District of New York by filing a complaint (the "*Meyer Complaint*") against, among others, LVP, Steven Lacaj, and Robert Davy Savage. The Meyer Complaint asserts five causes of action, including violations of the Exchange Act and the Securities Act, and claims concerning Respondeat Superior and Successor Liability.

On July 17, 2023, the Meyer Plaintiffs filed a letter in the Meyer Action, informing the Meyer Court that the Receivership Order stays the Meyer Action subject to further order of the Court in this action [Meyer Action, Dkt. 47].

### 9. Receivership Oversight

Time during the Application Period was also devoted to the general oversight of the Receivership Entities and the Receivership Estate. Conferences with the Receiver and members of the Receivership Team occurred on a frequent basis to facilitate the exchange of relevant information and to avoid duplication of effort.

### C. Forensic Accounting – Total Fees: $4,032.50

Time during the Application Period was also devoted to reviewing financial information in connection with the Receivership Entities' historical transactions. These documents were reviewed to assist the Receiver in understanding the Receivership Entities' pre-Receivership

financial affairs, including the transfer of funds to and from the Receivership Entities and gathering information in connection with contributions received from investors.

### D. Tax Issues – Total Fees: $985.00

Time during the Application Period was devoted to communicating with the Receivership Entities' legacy tax accountant to understand the services that the accountant provided to the Receivership Entities, understanding the Receivership Entities' tax situation, and obtaining financial documents.

Additionally, Applicants assisted with the preparation and review of documents in connection with the filing of the Receivership Entities' 2022 tax returns on September 15, 2023 and the 2022 Schedule K-1s that were issued to investors on or about that date.[5]

### V.    EXPLANATION OF EXPENSES AND RELATED POLICIES

Applicants seek reimbursement of their out-of-pocket costs in the amount of $1,036.29. **Exhibit F** sets forth the various categories of expenses for which the Receiver and Otterbourg seek reimbursement.  Applicants will retain the documentation supporting these expenses for a period of seven years in accordance with the Billing Guidelines and will provide the SEC with copies upon request.

(a)    With respect to all expenses, Applicants seek reimbursement only for the actual cost of their filing fees, postage and overnight delivery fees.  Applicants have not included in any request for expense reimbursement the amortization of the cost of any investment, equipment or

---

[5] The Receiver learned on October 6, 2023, when she received certain notices from the State of New York ("**NYS**"), that NYS asserts that the tax returns filed on September 15, 2023 were filed late (the "**Late Filing Notices**").  In the Late Filing Notices, NYS has assessed penalties against the Receivership Entities in the total amount of $90,000 for the late filing.  The Receiver has learned that prior to the Receivership, the Receivership Entities did not file timely extensions with NYS, due on March 15, 2023, to extend the date to file the tax returns to September 15, 2023 (the "**NY Extensions**").  The Receiver has learned that the Receivership Entities' legacy accountant had prepared NY Extensions but due to an unexplained error, the NY Extensions were not filed by the legacy accountant.  The Receiver has been in communication with the NYS tax authorities to seek to remove the penalties assessed in the Late Filing Notices.

capital outlay, except that Otterbourg requests reimbursement of $180.72 in out-of-pocket expenses for the purchase of two external hard drives for storage of data collected by the Receiver in the connection with this matter.  Whenever possible, Applicants have used email to transmit documents via portable document format, thereby reducing facsimile, overnight courier and copying costs otherwise chargeable to the Receivership Estate.[6]

(b)     In accordance with Section F.3.h of the Billing Guidelines, Otterbourg has charged for computerized research only to the extent of the actual discounted invoiced cost of its vendor, Westlaw.

(c)     In accordance with Section F.3.d. of the Billing Guidelines, Applicants are not seeking reimbursement for photocopying and laser printing expenses.

(d)     In accordance with Section F.3.j. of the Billing Guidelines, Applicants request reimbursement for out-of-pocket travel expenses in the amount of $254.82 for travel to and from Legend's New York Office including transporting materials collected from the New York Office to Applicant's office for safe keeping.  Applicants have neither sought reimbursement for late night travel home or travel to court (including mileage, taxis, etc.) nor for meals.

(e)     In accordance with Section F.3.k of the Billing Guidelines, Applicants have not sought reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime.

---

[6] In accordance with Section F.3.g., Otterbourg normally would seek reimbursement of outgoing facsimile charges. However, Otterbourg did not make any outgoing facsimile transmissions during the Application Period.

(f)     In some instances, costs incurred during a particular application period will not be reflected in Applicants' records until a subsequent application period. Applicants will seek reimbursement for such "trailing" expenses in subsequent fee application periods.

## VI.    FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's counsel.  This Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his or her counsel and "may consider all of the factors involved in a particular receivership in determining an appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).  Many authorities (even if dated) provide "convenient guidelines", but in the final analysis, "the unique fact situation of each case renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd sub nom*, 519 F.2d 1087 (5th Cir. 1975).

In allowing counsel fees in Securities Act receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods. Corp.*, 362 F.2d 669, 673 (3d Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).  "[R]esults are always relevant." *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (quoting *Moody*, 374 F Supp. at 480).  However, a good result may take a form other than a bare increase in monetary value. *Id.* ("Even though a receiver may not have increased, or prevented a

decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation.").

Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id.* at 483. Another "significant factor … is the amount of money involved." *Id.* at 486; *see also Gasser v. Infanti Int'l, Inc.*, 358 F. Supp. 2d 176, 182 (E.D.N.Y. 2005) (receiver's legal fees "must be reasonable in light of the services rendered by counsel and the amount of property held in the receivership").

Under these standards, Applicants have adequately demonstrated that the amount of fees requested is appropriate and warranted. Applicants have taken the necessary and appropriate steps to administer the Receivership Estate for the benefit of investors and creditors.

## VII. HOLDBACKS

Given the current inability of the Receivership Estate to pay any administrative costs, there are no payments of allowed amounts possible at this time. Additionally, both the Receiver and Otterbourg have agreed to hold back twenty percent (20%) of any allowed amounts (the "***Holdback Amount***"). Applicants understand that the Holdback Amount can be paid to the parties at the conclusion of the Receivership, subject to approval by the Court.

WHEREFORE, PREMISES CONSIDERED, the Receiver and Otterbourg respectfully request that the Court:

(a) grant interim approval of the Receiver's compensation in the amount of $5,589.00 (the "***Allowed Receiver Fees***");

(b) grant interim approval of Otterbourg's compensation in the amount of $65,463.20 (the "***Allowed Otterbourg Fees***" and, together with the Allowed Receiver Fees, the "***Allowed Fees***");

(c)     grant interim approval of Otterbourg's request for reimbursement of its out-of-pocket expenses in the amount of $1,036.29;

(d)     authorize the Receiver, subject to further Order of the Court, to pay (i) the Allowed Fees less the Holdback Amount, plus (ii) 100% of the allowed out-of-pocket expenses; and

(e)     grant such other relief as the Court deems appropriate.

Dated: November 14, 2023

Otterbourg P.C.

By: /s/ Erik B. Weinick
Erik B. Weinick
230 Park Avenue
New York, New York 10169
Tel.:  (212) 661-9100
Fax:  (212) 682-6104
eweinick@otterbourg.com

On Behalf of Melanie L. Cyganowski, as Receiver, and Otterbourg P.C., as Counsel to the Receiver